UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOEY MCLEOD | CIVIL ACTION |
| VERSUS | NO. 10-1907 |
| THE NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION, D/B/A NEW ORLEANS PUBLIC BELT RAILROAD COMPANY | SECTION: "C" (2) |

### ORDER AND REASONS[1]

Before the Court is Plaintiff's Motion for Partial Summary Judgment, filed by Plaintiff Joey McLeod ("McLeod"). (Rec. Doc. 14). Defendant New Orleans Public Belt Railroad Commission ("NOPB") opposes this motion (Rec. Doc. 24) and presents its own Motion for Summary Judgment. (Rec. Doc. 39). McLeod opposes this motion. (Rec. Doc. 48). Having reviewed the memoranda of the parties, the record in the case, and the applicable law, the Court DENIES Plaintiff's Motion for Partial Summary Judgment and DENIES Defendant's Motion for Summary Judgment for the following reasons.

### I. BACKGROUND

On September 24, 2009, a NOPB locomotive and two freight cars derailed on NOPB's mainline track near Nashville Avenue in New Orleans. (Rec. Doc. 39-1 at 1-2). A defective switch point at the Gumbo House Switch appeared to contribute to the derailment. (Rec. Doc. 48-10 at 2). NOPB's Mechanical Department Superintendent, John Morrow, instructed McLeod, a machinist in the Mechanical Department, to download the event recorder on the locomotive and to gauge and measure the wheels of the derailed locomotive. *Id*. at 2. McLeod was joined by fellow machinist, Larry Keys ("Keys"). *Id*. Gauging and measuring the wheels of the derailed locomotive required

---

[1] Scott Reid, a second year law student at Tulane Law School, assisted in the preparation of this order.

McLeod to crawl on the railroad tracks beneath the derailed locomotive. (Rec. Doc. 14-1 at 2). McLeod and Keys did not receive a job briefing to outline safety procedures for the project before they went to the derailment site. (Rec. Doc. 39-1 at 3).

NOPB personnel determined that the locomotive and one of the railcars would have to be rerailed with the assistance of a subcontractor; however, NOPB also determined that the second derailed railcar could be rerailed by pulling the railcar back onto the track with another locomotive. *Id*. at 2. When NOPB began rerailing the second railcar with another locomotive, McLeod alleges that he was under the derailed locomotive and that it began shaking. *Id*. at 3. McLeod had not placed a blue flag on the track to notify other workers that a machinist was working on the track at the site of the derailed locomotive. *Id*. at 4. McLeod alleges that he fell multiple times while scrambling to safety, and that those falls injured his lumbar spine. (Rec. Doc. 14-1 at 3). Furthermore, McLeod alleges that those injuries required surgery and left him permanently disabled and unable to perform his machinist duties for the railroad. *Id.*

## II. LEGAL STANDARDS AND ANALYSIS

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

In the present action, McLeod alleges that NOPB violated the Roadway Worker Protection Rules ("RWPR"), 49 C.F.R. § 214.315, when NOPB instructed McLeod to gauge and measure the wheels of the derailed locomotive without providing a job briefing and then moved the derailed railcar while McLeod was still under the derailed locomotive. (Rec. Doc. 14-1 at 2). McLeod alleges that the violation of RWPR amounts to negligence per se under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. (Rec. Doc. 14 at 1). NOPB denies McLeod's negligence claim, alleging that McLeod was not a roadway worker and therefore was not entitled to a job briefing under the RWPR. (Rec. Doc. 24 at 3). Furthermore, NOPB argues that McLeod was not an employee of the Maintenance of Way department, nor was McLeod's task part of the rerailing project. *Id*. Finally, NOPB alleges in its own Motion for Summary Judgment that McLeod is solely responsible for his injuries because he failed to request a job briefing or to place a blue flag on the track before he crawled under the derailed locomotive. (Rec. Doc. 39-1 at 4). Because the

opposing motions for summary judgment in this matter include a claim of negligence per se, this Court begins with its analysis of the parties' arguments regarding the per se negligence claim.

The RWPR defines a roadway worker, in relevant part, as "any employee of a railroad . . . whose duties include inspection, construction, maintenance or repair of railroad track . . . on or near track or with the potential of fouling a track." 49 C.F.R. § 214.7. Furthermore, the RWPR defines fouling a track as "the placement of an individual or an item of equipment in such proximity to a track that the individual or equipment could be struck by a moving train or on-track equipment, or in any case is within four feet of the field side of the near running rail." *Id*. The RWPR requires employers to provide roadway workers with a job briefing when the employer assigns the worker duties that entail fouling the track:

> When an employer assigns duties to a roadway worker that calls for that employee to foul a track, the employer shall provide the employee with a job briefing that includes information on the means by which on-track safety is to be provided, and instruction on the on-track safety procedures to be followed.

49 C.F.R. § 214.315. Failure to provide a job briefing for an employee assigned duties that necessitate fouling a railroad's tracks is negligent per se. *See Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432-33 (1958); *Morant v. Long Island R.R.*, 66 F.3d 518, 522-23 (2nd Cir. 1995); *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 543 U.S. 308, 318-19 (2005); *Consol. Rail Corp. v. Gottschall*, 512 U.S. 532, 543 (1994).

Under the RWPR, the definition of a roadway worker is intended to be interpreted broadly in order to protect a broad spectrum of railroad employees who might be vulnerable to injury from a train while completing their work duties. *Baker v. Can. Nat'l/Ill. Cent. Ry. Co.*, 397 F.Supp.2d 803, 809 (S.D. Miss. 2005), *aff'd*, 536 F.3d 357 (5th Cir. 2008). This broad interpretation is consistent with the Federal Railroad Authority's intent, as stated in the RWPR supplemental

information:

> On-track safety is defined as the state of freedom from the danger of being struck by a moving railroad train or other railroad equipment, provided by operating and safety rules that govern track occupancy by personnel, trains, and on-track equipment. This term states the ultimate goal of this regulation, which is for workers to be safe from the hazards related to moving trains and equipment while working on or in close proximity to the track.

61 FR 65959-01 at 65966. However, although the definition of a roadway worker is intended to include a wide variety of workers, the statute's language itself sets parameters on the breadth of the definition. Among these parameters are that the worker must have duties to inspect, construct, maintain, or repair railroad track, and that those duties are "on or near track or with the potential of fouling the track." 49 C.F.R. § 214.7. In this case, McLeod was assigned work duties that entailed fouling the railroad track, but fouling the track is merely a necessary condition of the roadway worker definition; it is not a sufficient condition of the roadway worker definition. (Rec. Doc. 14-1 at 2). Because McLeod's duties as a machinist were limited to maintenance of the locomotives, not the railroad track, he fails to satisfy the work duty component of the roadway worker definition. (Rec. Doc. 24 at 6). Accordingly, this Court holds as a matter of law that McLeod was not a roadway worker under the RWPR definition while he was fouling the track. (Rec. Doc. 14-1 at 2).

Moreover, because McLeod was not a roadway worker when he was completing his task of gauging and measuring the wheels on the derailed locomotive, NOPB did not violate 49 C.F.R. § 214.315 when it failed to give McLeod a job briefing.

Having established that McLeod was not a roadway worker at the time of the accident and that NOPB was not obligated to give McLeod a job briefing before he began his work under the locomotive, the Court therefore holds that NOPB was not negligent per se. *See Kernan*, 355 U.S. at 432-33; *Morant*, 66 F.3d at 522-23; *Grable & Sons*, 543 U.S. at 318-19; *Gottschall*, 512 U.S. at

5

543. Accordingly, McLeod's Motion for Partial Summary Judgment is DENIED.

Turning now to NOPB's allegation that McLeod is solely responsible for the alleged accident and resulting injuries, the Court notes that material questions of fact remain as to the apportionment of fault between NOPB and McLeod. One the one hand, questions of fact remain as to NOPB's knowledge of defect at the Gumbo House Switch, the speed of the train at the time of derailment, and NOPB's alleged failure to communicate its rerailing project plan to McLeod. (Rec. Doc. 48 at 9-10). Furthermore, material questions of fact remain as to whether McLeod provided sufficient notice of his intention to foul the tracks to other NOPB employees at the derailment site. (Rec. Doc. 39-1 at 6, 10). Accordingly, NOPB's Motion for Summary Judgment is DENIED.

### III.  CONCLUSION

Accordingly

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED. (Rec. Doc. 14). Furthermore, Defendant's Motion for Summary Judgment is DENIED. (Rec. Doc. 39).

New Orleans, Louisiana, this 27th day of July, 2011.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**