**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOEY MCLEOD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-1907** |
| **NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION** | **SECTION: "C" (2)** |

## ORDER & REASONS

Before the Court is Defendant New Orleans Public Belt Railroad Commission's ("NOPB") Motion for Partial Summary Judgment. (Rec. Doc. 91). Based on the memoranda of counsel, the record, and the law, the Motion is denied for the following reasons.

## I. BACKGROUND

The facts of this case were detailed in this Court's July 27, 2011, Order & Reasons, and are summarized below. (Rec. Doc. 78). On September 24, 2009, a NOPB locomotive and two freight cars derailed on NOPB's mainline track near Nashville Avenue in New Orleans. Plaintiff, a machinist for NOPB, was instructed by NOPB's Mechanical Department Superintendent, John Morrow, to gauge and measure the wheels of the derailed locomotive. This task required crawling onto the tracks and under the locomotive. NOPB began rerailing the westernmost railcar, which was not attached to the derailed locomotive, by uncoupling it from the other railcar and attempting to couple it with another locomotive. While it was doing so, the derailed locomotive began to shake. Plaintiff was underneath the derailed locomotive at the time, and as he scrambled to safety, he fell

1

several times, injuring his lumbar spine. Plaintiff's claims arise out of his alleged resulting permanent disability and inability to work as a machinist. (Rec. Doc. 78).

In its July 27, 2011, Order, the Court denied Plaintiff's Motion for Partial Summary Judgment seeking an order that NOPB was negligent *per se* under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* The Court found that Plaintiff was not entitled to a job briefing by NOPB before he went to the derailment site because he was not a "roadway worker" covered by the Roadway Worker Protection Rules. (Rec. Doc. 78). In that Order, the Court also denied NOPB's Motion for Summary Judgment because questions of fact remained regarding (1) NOPB's knowledge of the defect at the Gumbo House Switch that allegedly contributed to the derailment; (2) the speed of the train at the time of derailment; (3) NOPB's alleged failure to communicate its rerailing project plan to McLeod; (4) McLeod's alleged failure to give sufficient notice of his intention to foul the tracks to other NOPB employees at the derailment site when he failed to place a blue flag on the track to signal that he was working on the track. (Rec. Doc. 78). Subsequently, Plaintiff filed a First Amended Complaint, in which he asserted another claim under the FELA, this time, for violating the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20302. Specifically, he alleged that NOPB employees failed to uncouple the westernmost derailed car from the rest of the derailment, causing the derailed locomotive to move while Plaintiff was underneath it, and thereby causing Plaintiff's injuries. (Rec. Doc. 83 at ¶¶ 4-5).

In its Motion, NOPB argues that Plaintiff cannot assert a cause under the FSAA because (1) Plaintiff cannot prove there was any defect under the FSAA; and (2) even if Plaintiff can prove a defect existed, the train, which consisted of the derailed locomotive and two cars, was not "in use," and thus the FSAA does not apply. (Rec. Doc. 91 at 1). In its Opposition, Plaintiff argues that the Motion should be denied because (1) genuine issues of material fact exist regarding whether the

2

coupler was defective; and (2) the derailed equipment was "in use," as required for the FSAA to apply, because rerailing derailed equipment onto tracks is an "integral part of the equipment's use." (Rec. Doc. 96 at 2).

**II. LAW & ANALYSIS**

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1996). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on unsubstantiated assertions and conclusory allegations. *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994).

The FSAA states, in pertinent part:

(a) General.–Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines--

3

>    (1) a vehicle only if it is equipped with--
>       (A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles....

49 U.S.C. § 20302.

The text of the statute dictates, and the parties agree, that in order for the FSAA to apply, the vehicle, locomotive, or train at issue must be "in use." The parties also do not dispute that courts apply the same case law to analyze the FSAA as it does the Boiler Inspection Act, 49 U.S.C. § 20701. NOPB argues that this case mirrors the facts in *Trinidad v. Southern Pacific Transp. Co.*, where the plaintiff, a carman, was injured while performing an inspection of a locomotive before it had departed on its journey. 949 F.2d 187 (5th Cir. 1991). The Court is unpersuaded. The court in *Trinidad* indicated that whether a locomotive is considered "in use" when it has not yet passed its "initial inspection," and not yet departed on its journey, was an issue of first impression, and that it was deciding the case "on its facts alone." Unlike in *Trinidad*, here, the locomotive and two railcars were stopped because they derailed in the middle of a journey. Indeed, *Trinidad* distinguished its facts from those in *Brady v. Terminal R. Assoc.*, where the court found a train was "in use" when it had been "placed on a receiving track temporarily pending the continuance of its journey," and the train was in the midst of its journey when the injury occurred, and thus "had not been withdrawn from use." *Trinidad*, 949 F.2d at 189 (quoting *Brady*, 303 U.S. 10, 13, 15 (1938)). Further, *Trinidad* did not turn on the role of the carman at the time he was injured; it turned instead on the status of the vehicle with respect to its journey. *Trinidad*, 949 F.2d at 189.

Plaintiff argues that *Southern Railway Company v. Bryan* more closely matches this case. 375 F.2d 155 (5th Cir. 1967). The Court agrees. There, the Fifth Circuit held that the railroad vehicle was "in use" when the employee was injured while attempting to return a derailed locomotive to the tracks. The court so held because the vehicle was in the middle of its journey

when it derailed, and because "[g]etting the locomotive back on the track in the event of derailment was an integral part of its use...." *Bryan*, 375 F.2d at 157-158 ("Where the hauling of a disabled or defective railroad vehicle is 'in progress or in immediate contemplation,' the handling of it for that purpose is a part of its unitary journey form [sic] the point of discovery of disability to the repair shop.") (citations omitted). That the locomotive was unable to move on its own was not a factor in the decision. Thus, here, it is irrelevant that Plaintiff had placed on the derailed locomotive a "blue card," which puts brakes on the locomotive, or that the locomotive was not able to be used while derailed. (Rec. Doc. 91-6 at 5). Moreover, the plaintiff's role in *Bryan* did not clearly influence the court's ruling that the locomotive was "in use." Accordingly, it is not dispositive that Plaintiff in the instant case was gauging and measuring the wheels of the derailed locomotive, as opposed to participating in the rerailment. Like in *Bryan*, where the locomotive had come off the tracks in the middle of its journey, here, the locomotive and two railcars in this case were stopped because they had derailed during their journey. The Court therefore finds that they were "in use" for purposes of the FSAA.

Now that the Court has determined that the FSAA applies, it turns to whether a genuine issue of material fact exists regarding whether NOPB violated that statute. The Court finds that summary judgment is inappropriate here because there is insufficient evidence on both sides, and thus issues of fact remain. Lubrano testified that he himself held the lift lever while the westernmost car was uncoupling from the first car, that there was no defect or malfunction with the pin lever mechanism, and that the derailed locomotive did not move during the rerailment of the westernmost car. (Rec. Doc. 91-4 at 2, 4, 5). Plaintiff has no personal knowledge of who pulled the lever because he was underneath the derailed locomotive. However, both he and Larry Keys, another machinist who accompanied Plaintiff to the site of the derailed locomotive and was present at the scene of the

5

incident, testified that the car moved. (Rec. Doc. 96-7 at 5; Rec. Doc. 96-10 at 2-3). NOPB official John McCrossen first testified that Edgar Nichols had pulled the pin, and that the locomotive moved. (Rec. Doc.91-8 at 1). However, he later testified that Nichols told him, before Nichols passed away, that Nichols had not pulled the pin. (Rec. Doc. 91-5 at 10). McCrossen also stated that he did not see the locomotive move. (Rec. Doc. 91-5 at 5). Finally, he testified that although he was at the scene during the incident, he had no personal knowledge as to these two allegations. (Rec. Doc. 91-5 at 2, 4, 5).

The Court does not rely on McCrossen's handwritten statement or testimony in coming to its conclusion here. Accordingly, it declines to assess McCrossen's credibility and the admissibility of his statements regarding what Nichols told him. The Court agrees with Plaintiff that evidence in the record shows that there is a genuine issue of material fact as to whether the coupler was defective, and specifically, as to (1) who pulled the coupler pin; (2) wether the pin fell down; and (3) whether the locomotive moved while Plaintiff was under it. (Rec. Doc. 96 at 17). Accordingly, NOPB's Motion for Partial Summary Judgment is denied.

Accordingly,

IT IS ORDERED that the Motion for Partial Summary Judgment filed by Defendant is DENIED. (Rec. Doc. 91).

New Orleans, Louisiana, this 25th day of April, 2012.

HELEN G. BERRIGAN
UNITED STATED DISTRICT JUDGE